UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF NEW JERSEY, *ex rel.* MARGARET GATHMAN,<br><br>                Plaintiff-Relator,<br><br>v.<br><br>CAREONE MANAGEMENT LLC, *et al.*,<br><br>                Defendants. | Civil Action No.<br><br>17-6180 (SDW) (LDW)<br><br>**REPORT & RECOMMENDATION** |

**<u>LEDA DUNN WETTRE, United States Magistrate Judge</u>**

Before the Court is plaintiff-relator Margaret Gathman's ("Relator") motion for an award of attorneys' fees and costs pursuant to 31 U.S.C. § 3130(d)(1). (ECF No. 10). Defendant CareOne Management LLC ("CareOne") opposes the motion. (ECF No. 11). The Hon. Susan D. Wigenton, U.S.D.J., referred the motion to the undersigned for a Report and Recommendation. This motion is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Having considered the parties' written submissions and for the reasons set forth below, the Court recommends that Relator's motion for attorneys' fees be **GRANTED IN PART AND DENIED IN PART**.

                **I.**        **BACKGROUND**

This is an application for attorneys' fees following the settlement reached between the United States, Relator, and CareOne. The False Claims Act prohibits the submission of false claims for payment to the United States. *See* 31 U.S.C. § 3729(a)(1); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 486 (3d Cir. 2017). To incentivize enforcement, the False Claims

Act allows private individuals to sue for alleged violations – called *qui tam* suits – and offers them a percentage of an eventual recovery. *See* 31 U.S.C. § 3730(d); *Chang v. Children's Advoc. Ctr. of Delaware Weih Steve Chang*, 938 F.3d 384, 386 (3d Cir. 2019), *cert. denied*, 141 S. Ct. 243, 208 L. Ed. 2d 20 (2020). Such plaintiffs are called "relators," as the law also requires them to transmit (or "relate") their allegations to the Government. *See Simring v. Rutgers*, 634 F. App'x 853, 856 (3d Cir. 2015). The United States, as the real party in interest, must decide whether to intervene in a relator's lawsuit and thereby lend its expertise, negotiating leverage, and investigative resources to the cause. *Id.* If the government declines to intervene, the *qui tam* plaintiff may serve the complaint on the defendant and proceed with the action. 31 U.S.C. § 3730(b)(4)(B). When a False Claims Act suit results in a settlement in which the relator receives payment from the defendant, the relator also is entitled to reasonable attorneys' fees. 31 U.S.C. § 3730(d); *see also Simring*, 634 F. App'x at 857.

      Relator here, who is alleged to be a former top billing professional at CareOne, commenced this *qui tam* action on behalf of the United States and the State of New Jersey in August 2017 with the filing of an under-seal complaint alleging causes of action under the federal False Claims Act, 31 U.S.C. § 3729, and the New Jersey False Claims Act, N.J.S.A. § 2A:32C-3. (Compl., ECF No. 1). Her counsel had begun researching the factual and legal background for bringing the action in 2016. That research culminated in the drafting and filing of a 27-page Complaint and accompanying 19-page disclosure statement. Within thirty days of receiving the Complaint, the United States sought to stay the matter and commence its own investigation into the allegations. (ECF No. 3). The government interviewed Relator in February 2018, and subsequently Relator's counsel provided the government with information and legal memoranda in response to their inquiries. During the course of the litigation, Relator and her counsel prepared five memoranda

analyzing legal and factual issues at the government's request and attended three in-person meetings with the government. (Kocher Decl. ¶¶ 17-26, ECF No. 10-4). With assistance from Relator's counsel, the United States eventually reached a settlement in principle with CareOne, to which Relator consented. Under the settlement, CareOne has agreed to pay a total of $714,996, with $143,000 of that sum going to Relator. (*See* Settlement Agreement, ECF No. 10-5).

Relator agreed to dismiss her Complaint, and the Court entered an order dismissing all claims on February 18, 2021. (ECF No. 9). The parties were unable to settle Relator's claim for reasonable attorneys' fees and costs, necessitating the instant motion.

## II.   DISCUSSION

Where a defendant pays an amount in settlement to the United States and a relator in a False Claims Act case, the Act mandates that the relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). There is no dispute that Relator is entitled to a statutory award of reasonable attorneys' fees and costs. Only the amount of those fees is disputed on this motion. The Court therefore determines what are "reasonable fees and costs" in light of Relator's submissions and Care One's objections.

### A.   Lodestar Calculation

"The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Relator's counsel bears the burden of demonstrating the reasonableness of both their rate and number of hours. *See United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) (citing *Rode v.*

3

*Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. *Id*. Once the challenging party does so, "the district court has a great deal of discretion to adjust the fee award in light of those objections." *Id*.

The Court will proceed to perform its "positive and affirmative function in the fee fixing process" with the documentation submitted, *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001), recognizing that "the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires," *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989). Thus, the Court considers the reasonableness of the aggregate hours counsel devoted to each aspect of the litigation, taking into account defendant's objections. The Court believes this method to be the best way to achieve "the essential goal in shifting fees" – that is, "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### 1. Hourly Rates

With respect to Relator's counsel's billing rates, "a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado*, 256 F.3d at 184. The law firms of McOmber McOmber & Luber, P.C. ("MML") in Marlton, New Jersey and Saltz, Mongeluzzi, & Bendesky, P.C. ("SMB") in Philadelphia, Pennsylvania were co-counsel for Relator. (Charles Kocher moved from the SMB firm to the MML firm during the pendency of this case, which is why he appears in both charts below.)

Relator seeks to recover fees for worked performed by the law firm of MML at the following rates:

| Attorney | Hourly Billing Rate |
|---|---|
| Charles Kocher (partner) | $425 |

4

| | |
|---|---|
| Christian McOmber (partner) | $425 |
| Matthew Luber (partner) | $425 |
| Paralegal | $150 |
| Law Clerk | $150 |

(Decl. of Matthew Luber ¶ 30, Exh. 4, ECF No. 10-7).

Relator seeks to recover fees for work performed by the law firm of SMB at the following rates:

| Attorney | Hourly Billing Rate |
|---|---|
| Simon Paris (partner) | $715 |
| Charles Kocher (associate) | $575 |
| Briege Hartman (paralegal) | $340 |

(Decl. of Simon Paris ¶ 13, ECF No. 10-6).

The Court has reviewed the Declarations of Charles Kocher, Simon Paris, and Matthew Luber, which sets forth in detail their qualifications and experience, and finds that the hourly rates charged by the SMB and MLL firms fall within the range of rates charged by attorneys of comparable skill, education, and experience in this District. (ECF Nos. 10-4, 10-6, 10-7). Although defendant complains that Relator has not put forth sufficient justification for counsel's rates, Relator's counsel has shown their rates have been approved by this Court previously (Kocher Decl. ¶ 7 and Exh. 2, ECF No. 10-4), and that CareOne's counsel has been paid rates exceeding the rates sought here (Kocher Decl., ECF Nos. 13-3, 13-4). *See Middlebrooks v. Teva Pharm. USA, Inc.*, No. CV 17-412, 2019 WL 936645, at *13-14 (E.D. Pa. Feb. 26, 2019) (considering hourly rates paid by opposing party in determining reasonableness of rates). The rates sought by Relator's counsel fully comport with prevailing rates in this District, with which the Court is familiar by virtue of its experience with fee applications in numerous other cases. *See, e.g., United States ex rel. Bahnsen v. Bos. Sci. Neuromodulation Corp.*, No. CV 11-1210, 2021 WL 118927, at *3 (D.N.J. Jan. 11, 2021) (finding $618 blended hourly rate for attorneys reasonable for False

Claims Act litigation in District of New Jersey). Therefore, the Court approves counsel's rates as reasonable.

### 2. Hours of Work Performed

In terms of compensation for the number of hours expended on this action, Relator's counsel seeks 228.1 hours attributed to the SMB firm and 321.1 hours attributed to the MML firm. (Paris Decl. ¶ 13, ECF No. 10-6; Kocher Decl. ¶ 3, ECF No. 10-4). Defendant makes various objections to the number of hours for which Relator's counsel seeks payment. Specifically, defendant contends the following categories of hours should be excluded from the fee award: (1) work performed on the New Jersey False Claims Act claim; (2) "redundant" work performed by the SMB firm after Mr. Kocher left that firm to join the MML firm; (3) work performed in connection with Relator's separate employment action against CareOne; and (4) work that did not require the skills of an attorney. The Court addresses each objection in turn.

First, defendant seeks to exclude the billing entries for work performed on the New Jersey False Claims Act claim.[1] Although the lodestar is the "most useful starting point for determining the amount of a reasonable fee," the Court may make a reduction to counsel's fees based on limited or partial success. *Hensley*, 461 U.S. at 433; *see also United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, No. 20-1922, 2021 WL 2933212, at * 29 (3d Cir. July 13, 2021) (affirming district court's application of *Hensley* standard in False Claims Act attorneys' fee petition when evaluating defendant's limited success argument). For several reasons, the Court rejects CareOne's argument that Relator's fees should be cut substantially based on her purported limited success on the New Jersey False Claims Act claim. As an initial matter, it is not clear

---

[1] The Complaint alleged causes of action under the False Claims Act, 31 U.S.C. § 3729, and the New Jersey False Claims Act, N.J.S.A. § 2A:32C-3.

6

factually that the state False Claims Act claim was unsuccessful, and the Court would not reach such a conclusion lightly given that the statutory scheme is designed to encourage fee awards to incentivize individuals and their counsel to assist the government in uncovering false claims. *See Chang*, 938 F.3d at 386. The text of the settlement agreement releases *both* the federal and state causes of action under the False Claims Act conditioned upon defendant's payment of the settlement amount; thus, it is by no means apparent that the state claim was not part of the consideration for the settlement. (*See* Settlement Agreement ¶ 4, ECF No. 10-5). Certainly, the claim was not dismissed before trial, as in other cases where fees associated with particular claims were not recoverable on a lack-of-success basis. *See, e.g., United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, No. 09-cv-4230, 2020 WL 1821028, at *10 (E.D. Pa. Apr. 10, 2020) (noting relator's counsel voluntarily cut over 1,000 hours from fee request given dismissal of certain claims prior to trial), *aff'd*, 2021 WL 2933212 (3d Cir. July 13, 2021). Further, this is a case where the defendant paid a significant sum (over $700,000) in part due to Relator's efforts, so the Court does not conclude from the settlement achieved that the action was in any respect "unsuccessful." *See Customs Fraud Investigations, LLC v. Victaulic Co.*, No. 13-cv-2983, 2019 WL 4280494, at *5 (E.D. Pa. Sept. 9, 2019) (rejecting limited success argument and describing $600,000 False Claims Act settlement as "substantial"). The Court thus finds that "limited success" is not an adequate basis for cutting any portion of counsel's fee.

For the same reasons, the Court will not make an across-the-board cut to the lodestar (*i.e.*, a "negative multiplier") as an alternative method of reducing counsel's fees for purported "limited success." *See Hensley*, 461 U.S. at 436–37 (noting degree of success determination has "no precise rule or formula" and court may exercise discretion through wholesale reduction/enhancement of award). The rationale for not making a percentage cut to the lodestar as a whole is the same

rationale for not carving out the category of fees associated with the New Jersey False Claims Act claim: the Court believes defendant's "limited success" contention to be without merit.[2]

Second, defendant seeks to exclude fees for work performed by SMB after principal attorney Charles Kocher left that firm for MML. Defendant's position is that because Charles Kocher was the principal attorney on this action since its inception, he did not need the assistance of his co-counsel at SMB after he joined MML. In other words, defendant implies that SMB performed unnecessary work to enhance the firm's investment in this fee-shifting matter once Mr. Kocher left the firm. As the Court finds no evidence of improper billing by SMB after Mr. Kocher departed for MML, the Court finds this objection to be unfounded.

Third, defendant challenges billing entries for work performed in connection with Margaret Gathman's separate CEPA lawsuit filed against CareOne. Although Relator asserts that these hours spent in her other lawsuit were for the purpose of protecting the confidentiality of the under-seal Complaint in this case, she has not sufficiently justified the recovery of attorneys' fees here for work performed in a different (albeit tangentially related) case. Therefore, the Court finds that the reasonableness of these hours has not been established, and the 4.2 hours in billing entries (totaling $2,415) involving Gathman's CEPA case should be excluded from the fee award.

Fourth, defendant objects to time entries for clerical work such as applying redactions to the Complaint and related documents. The Court agrees. "Clerical work should not be billed at the rate of an experienced attorney." *D'Orazio v. Washington Twp.*, Civ. A. No. 07-5097, 2011 WL 6715635, at *5 (D.N.J. Oct. 18, 2011). Therefore, the 7.9 hours Mr. Kocher spent on

---

[2] Nor does the Court find that this case exceptional in any way that justifies an enhancement to the lodestar, which the Court believes already provides reasonable compensation for counsel's time, effort, and degree of success in litigating this case. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010) (noting lodestar figure in fee-shifting matter may be enhanced only in limited "rare" or "exceptional" circumstances).

redactions-related work should be reduced by fifty percent, which would make it more in line with the rate of SMB's paralegal who performed similar work. Therefore, the 7.9 hours in billing entries (totaling $4,542.50) related to Mr. Kocher's redaction-related work should be reduced by 50%.

Thus, the final lodestar calculation is:

| Phase | Description | Hours Requested | Fees Requested | Adjusted Hours | Adjusted Fees |
|---|---|---|---|---|---|
| I | Pre-Suit Investigation and Filing | 109.8 | $59,762.00 | 109.8 | $59,762.00 |
| II | Assistance to Government | 153.8 | $84,609.00 | 149.6 | $79,922.75[3] |
| III | Settlement Negotiations | 46.8 | $25,081.00 | 46.8 | $25,081.00 |
| IV | Fee Application | 39.6 | $23,848.00 | 39.6 | $23,848.00 |
| **Total** | | 350.0 | $193,300.00 | 345.8 | **$188,613.75** |

### III. CONCLUSION

For the foregoing reasons, the Court recommends that Relator's motion be **GRANTED IN PART AND DENIED IN PART** and that relator's counsel be awarded $188,613.75 in attorneys' fees and $303.51 in costs. The parties are hereby advised that, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, they have 14 days after being served with a copy of this Report and Recommendation to serve and file specific written objections to the Hon. Susan D. Wigenton, U.S.D.J.

Dated: August 23, 2021

                                          *s/ Leda Dunn Wettre*
                                          Hon. Leda Dunn Wettre
                                          United States Magistrate Judge

---

[3] As explained above, 4.2 of Mr. Kocher's hours (totaling $2,415) are to be excluded for work performed on relator's separate CEPA action. Further, the Court will reduce the 7.9 hours (totaling $4,542.50) Mr. Kocher spent performing redaction-related work by fifty percent, bringing this sum to $2,271.25. These two reductions ($2,415 and $2,271.25) are subtracted from the fees requested in Phase II.